**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

BRIAN ROBINSON                    :     Civ. A. No. 08-5863(NLH)(JS)

      Plaintiff,          :

          v.              :     **OPINION**

SGT. JANET JORDAN,                :

      Defendant.          :

**APPEARANCES**:

WILLIAM H. BUCKMAN
110 MARTER AVENUE
SUITE 209
MOORESTOWN, NJ 08057

    On behalf of plaintiff

ANNE E. WALTERS
CHARLES SHIMBERG PC
41 SOUTH HADDON AVENUE
2ND FLOOR
HADDONFIELD, NJ 08033

    On behalf of defendant

**HILLMAN, District Judge**

Presently before the Court is the motion of defendant for summary judgment on plaintiff's claims that defendant violated his federal and state constitutional rights for falsely arresting and maliciously prosecuting him.  For the reasons expressed below, defendant's motion will be denied.

**BACKGROUND**

Plaintiff, Brian Robinson, claims that defendant, Sergeant Janet Jordan, who is an investigator for the Camden County Prosecutor's Office, filed criminal complaints against plaintiff

without probable cause, thus causing him to be falsely arrested and erroneously and maliciously prosecuted, in violation of his federal and state constitutional rights.  Plaintiff claims that on the morning of March 15, 2008, defendant caused him to be arrested, criminally charged, and prosecuted for allegations made by his 16 year-old daughter, J.R., and her 18 year-old boyfriend, Douglas Greenwood,[1] that on the previous day, plaintiff had pushed her down the stairs and raped her, as he had done on several previous occasions.  Plaintiff vigorously denies the claims of his daughter and her boyfriend, and the charges were ultimately dropped because of J.R.'s refusal to testify before the grand jury.  Plaintiff contends that defendant committed numerous egregious errors in her investigation into the allegations, and defendant's incompetence led to his arrest, prosecution, and resulting damages to his health, reputation, and economic status.[2]  Plaintiff has brought claims pursuant to 42

---

[1] The Court will use J.R.'s initials, as the parties have, because she was a minor at the time of the incident.  Greenwood was in 11th grade at the time.  It is unclear what grade J.R. was in, as Greenwood told the defendant that J.R. was in a special 2 p.m. to 6 p.m. high school program, and J.R. stated that she was home-schooled.

[2] Plaintiff is a 20-plus-year veteran of the Cherry Hill police force.  After plaintiff was arrested and briefly interviewed by defendant, he was transported to the Camden County jail, where in the normal course he was processed, strip searched, and placed in an orange jumpsuit.  He was held at the Camden County jail for an hour until he was transferred to the Gloucester County jail because he had previously worked at the Camden County jail and had arrested inmates housed there.  When

U.S.C. § 1983 for violation of his Fourth Amendment rights under the U.S. Constitution, as well as claims pursuant to the New Jersey Constitution for similar violations of his rights.

Defendant has moved for summary judgment on plaintiff's claims, arguing that she did not commit any errors in her investigation, and that plaintiff's arrest was supported by sworn affidavits of Greenwood and J.R.  Accordingly, defendant argues that plaintiff's arrest was supported by the requisite probable cause.  Defendant further argues that plaintiff's claims for malicious prosecution fail because his arrest was based on probable cause, and because she did not act maliciously in effecting his arrest.  Defendant also contends that she is entitled to qualified immunity on plaintiff's federal constitutional claims.  Plaintiff has opposed defendant's motion.

## DISCUSSION

### A.    Subject Matter Jurisdiction

Plaintiff has brought federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under New Jersey law. This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over

---

he arrived at the Gloucester County jail, he was again processed, strip searched and placed in a cell.  In the late afternoon, he was transferred back to Camden County jail to be processed out and released on $100,000 bail.  In order to secure the bail, plaintiff's wife signed over the deed to their home and paid $10,000 to a bail bondsman.

plaintiff's related state law claims under 28 U.S.C. § 1367.

   **B.    Standard for Summary Judgment**

   Summary judgment is appropriate where the Court is satisfied
that "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).

   An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the nonmoving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting
Anderson, 477 U.S. at 255).

   Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.,
477 U.S. at 323; see Singletary v. Pa. Dept. of Corr., 266 F.3d

4

186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on
the summary judgment movant to show the absence of a genuine
issue of material fact, 'the burden on the moving party may be
discharged by 'showing' -- that is, pointing out to the district
court -- that there is an absence of evidence to support the
nonmoving party's case' when the nonmoving party bears the
ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).
Once the moving party has met this burden, the nonmoving party
must identify, by affidavits or otherwise, specific facts showing
that there is a genuine issue for trial.  Id.  Thus, to withstand
a properly supported motion for summary judgment, the nonmoving
party must identify specific facts and affirmative evidence that
contradict those offered by the moving party.  Anderson, 477 U.S.
at 256-57.  A party opposing summary judgment must do more than
just rest upon mere allegations, general denials, or vague
statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.
2001).

   **C.  Analysis**

   Defendant advances several bases for a finding of summary
judgment in her favor, but primarily she argues that plaintiff's
claims for malicious prosecution and false arrest fail against
her because there are no facts to show that plaintiff's arrest
was not supported by probable cause.

   The failure of the arresting officer to have probable cause

is a required element in both of plaintiff's claims against

defendant.  To state a claim for false arrest, a plaintiff must

show that the arresting officer lacked probable cause to make the

arrest.  Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004).  To

prove malicious prosecution under the Fourth Amendment,[3] a

plaintiff must show that: (1) the defendant initiated a criminal

proceeding; (2) the criminal proceeding ended in his favor; (3)

the defendant initiated the proceeding without probable cause;

(4) the defendant acted maliciously or for a purpose other than

bringing the plaintiff to justice; and (5) the plaintiff suffered

deprivation of liberty consistent with the concept of seizure as

a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d

75, 81-82 (3d Cir. 2007) (footnote omitted).  The element of

malice may be inferred from a lack of probable cause.  Morales v.

Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997) (citing Voytko v.

---

[3] Because the analysis of claims under state constitutional
law is similar to the analysis under the Fourth Amendment, no
separate analysis will be undertaken for plaintiff's claims
arising under the New Jersey Constitution.  See Hedges v. Musco,
204 F.3d 109, 121 (3d Cir. 2000) (granting defendants' motion for
summary judgment on plaintiffs' claims under Article I, paragraph
7 of the New Jersey Constitution, because it was already
established that there was no federal constitutional violation)
(citing Desilets v. Clearview Regional Bd. of Educ., 627 A.2d
667, 673 (N.J. Super. Ct. App. Div. 1993) ("We are not persuaded
that the New Jersey Constitution provides greater protection
under the circumstances of this case than its federal
counterpart. We note that in its T.L.O. opinion the New Jersey
Supreme Court analyzed the search and seizure issue under the
Fourth Amendment to the United States Constitution, and did not
suggest that New Jersey's organic law imposed more stringent
standards.")).

<u>Ramada Inn</u>, 445 F. Supp. 315, 322 (D.N.J. 1978) (applying New Jersey law)) (other citations omitted).

To determine whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.  <u>Devenpeck</u>, 543 U.S. at 152-53 (2004).  "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted).  Rather, probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  <u>Id.</u>

In this case, defendant argues that she had more than sufficient probable cause to effect plaintiff's arrest[4] because it was based on the sworn statements of Greenwood and J.R.  At about 8:00 p.m. on Friday, March 14, 2008, defendant was informed by a lieutenant at the Pennsauken police department that J.R.'s

---

[4] When defendant determined that plaintiff should be arrested, defendant spoke with an assistant prosecutor, who authorized plaintiff to prepare the necessary warrants. Defendant then went to the Gloucester Township police station and the Lindenwold police station to prepare the complaints. Defendant signed these complaints under oath.  These complaints served as the warrants for plaintiff's arrest, and they authorized the Gloucester Township police to arrest plaintiff at his home on March 15, 2008.

boyfriend, Greenwood, was making an allegation of sexual assault. (Def. Ex. C.)  Defendant arrived at the Pennsauken police station and took Greenwood's statement under oath.  According to Greenwood's tape-recorded statement, which was subsequently transcribed, he stated that J.R. told him that over the weekend, plaintiff had pushed her down the stairs at plaintiff's home and had raped her.  Greenwood also stated that J.R. told him this had happened on previous occasions over the course of three years, and that plaintiff had threatened J.R. not to tell anyone. Greenwood further related that J.R. told him that her side and back hurt.  He also stated that J.R. expressed a desire to harm her father for what he had done to her.

Later that evening, at 11:52 p.m., J.R. provided a tape-recorded statement under oath to the defendant.  (Def. Ex. D.) J.R. stated that plaintiff had raped her the previous weekend and once before.  The first time was when she was thirteen while she was sleeping in her sister's room.  When asked about the next time plaintiff raped her and whether he did it regularly, J.R. stated, "Not . . . some . . . not all of the time but some of the time," when she was either sleeping alone or her siblings were at school.  J.R. then described the most recent encounter that occurred over the weekend, stating that she arrived early in the morning when her siblings were at school and her step-mother was not at home.  She stated that she was in her brother's room when

8

plaintiff pushed her against the wall, and then down onto the
bed.  She stated he told her, "Don't fight it," and "Don't tell,"
after showing her his gun.  J.R. related another encounter that
occurred the month before, and then explained that she has told
no one other than Greenwood about this.  The statement ended with
J.R. affirming the truthfulness of her statement, and affirming
that she was not threatened to provide this statement.  The tape
recorded statement concluded at 12:20 a.m.

In response to defendant's position that these two
statements establish probable cause to arrest and prosecute him
for sexually assaulting his daughter, plaintiff makes several
arguments to dispute the propriety of defendant's purported
probable cause.  First, plaintiff points out the various
inconsistencies within J.R.'s statement, and in comparison to
Greenwood's statement.  For example, Greenwood related that J.R.
told him that plaintiff pushed J.R. down the stairs, and that her
side and back hurt.  J.R. did not relate this occurrence to
defendant, defendant did not ask J.R. about whether she was
pushed down the stairs, and defendant did not cause J.R. to be
evaluated for any bruising or pain.  Additionally, Greenwood told
the defendant that J.R. was suffering from cancer and an
autoimmune disorder, yet J.R. did not mention these conditions
during her statement, and defendant did not ask her about them.
Further, Greenwood told defendant that J.R. had expressed a

desire to harm her father, and J.R. did not relate this to
defendant, and defendant did not ask about it.  Plaintiff
contends that defendant's failure to follow-up on these, and the
numerous other inconsistencies--such as the date of the most
recent alleged sexual assault--is fatal to finding that a
reasonable person would believe plaintiff had committed the
alleged offense.

Second, plaintiff presents evidence that J.R.'s testimony
was not as voluntary as her statement makes it seem.  After
taking Greenwood's statement, defendant testified at her
deposition that she went to J.R.'s home and told her that
Greenwood had informed them that J.R. had been subject to sexual
abuse, although defendant did not inform J.R., or her mother and
siblings who were also present, that the alleged perpetrator was
her father.  J.R. voluntarily went to the station with her
mother, but when she arrived and defendant explained that
Greenwood had revealed J.R.'s allegations about her father, she
refused to give a statement and, crying, stated nothing happened,
that she did not want to talk about it, and that she did not know
what Greenwood was talking about.  (Pl. Ex. 2 at 48-49.)
Defendant asked J.R. why Greenwood would report something to the
police if it did not really happen, because to do so would expose
him to charges for making a false report.  (Id. at 50.)
Defendant testified that J.R. continually asked to speak with

10

Greenwood, and she was finally permitted to talk to him in private.  (Id.)  It was only at that point that J.R. agreed to give a statement.  Plaintiff thus contends that J.R.'s statement was procured by improper motivations.

Additional reasons plaintiff proffers to demonstrate problems with defendant's purported probable cause are defendant's failure to: (1) ask J.R. about how often she visited with her father, as her parents are divorced and she lived with her mother; (2) conduct any criminal background checks on J.R., Greenwood, or plaintiff; (3) speak to J.R.'s mother, who accompanied J.R. to the police station, about J.R.'s claims as to her father's sexual abuse or to her health conditions[5]; (4) ask plaintiff during their taped interview, regarding the last alleged rape, where he was on the night J.R. claimed that he raped her; and (5) think that a question as to plaintiff's whereabouts was relevant to ask.

Further, plaintiff has provided his testimony that several portions of plaintiff's taped interview with defendant are not reflected in the written transcript.  Specifically, plaintiff claims that defendant told him at the beginning of the interview that plaintiff "looked guilty" by the look on his face.  Plaintiff also claims that defendant told him that he, a Cherry

_____

[5] It has been admitted that J.R. does not suffer from the conditions Greenwood said she described to him.

Hill police officer, would be placed in the general population at the county jail and incarcerated without bail.  Additionally, plaintiff claims that the transcript is missing his conversation with defendant that when the officers arrived at his house to arrest him, he thought they were there to notify him of someone's death.

In evaluating the sufficiency of probable cause, the Third Circuit has directed that the question of probable cause is one for the jury, unless, when accepting all of a plaintiff's allegations as true, no reasonable jury could find a lack of probable cause.  Montgomery v. De Simone, Ptl., 159 F.3d 120, 124 (3d Cir. 1998) (citations omitted).  In this case, viewing the evidence in the most favorable light to plaintiff, as the Court must do in deciding a motion for summary judgment, the Court finds that plaintiff has demonstrated sufficient issues of disputed material fact to send the issue of probable cause to the jury.

Allegations of sexual abuse perpetrated by a father on his daughter are extremely serious and should not be taken lightly in order to protect the child.  On the other hand, because of the seriousness of those allegations, and the severe ramifications for the accused, a person who investigates those claims and has the power to effect an arrest and prosecution must balance those considerations in making a determination as to a particular

12

course of action.[6]  In this case, defendant relied upon the

statements of the alleged victim and her only confidant, her

boyfriend, to determine that plaintiff should be immediately

arrested for sexually abusing his daughter.  This by itself does

not demonstrate a lack of probable cause.  Plaintiff, however,

has pointed to numerous issues concerning the veracity of J.R.'s

testimony and the thoroughness of defendant's investigation such

that a jury, if it accepted plaintiff's proofs, could find that

no reasonable person in defendant's position could have believed

probable cause existed that plaintiff committed the acts as

described by J.R.[7]

Consequently, plaintiff's false arrest and malicious

---

[6] Even though defendant did not herself arrest plaintiff,
and it was the assistant county prosecutor who sanctioned
defendant's preparation of the arrest warrants, defendant may
still be held liable for false arrest and malicious prosecution.
See Morales v. Busbee, 972 F. Supp. 254, 263 n.4 (D.N.J. 1997)
(denying summary judgment to the county prosecutor office's
investigator on the plaintiff's false arrest and malicious
prosecution claims because issues of material fact remained as to
whether probable cause existed for plaintiff's arrest and
prosecution, despite the fact that the prosecutor approved the
issuance of the arrest warrants, because without knowing the
substance of the investigator's representations to the
prosecutor, it could not be determined what information the
prosecutor relied upon--that is, it could not be known whether
the investigator accurately described the proofs proffered to
support probable cause).

[7] The Court emphasizes that it has not made any
determination as to whether J.R.'s allegations against her father
are true, and it has not made any determination as to whether
probable cause was lacking.  Rather, the Court finds that it is
for the jury to decide whether defendant acted with the proper
probable cause to arrest and prosecute plaintiff when she did.

prosecution[8] claims, under federal and state law, must proceed to trial.[9]

---

[8] Defendant argues that plaintiff cannot show that she acted maliciously, and, thus, his malicious prosecution claim fails for that reason alone.  "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Morales v. Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997) (citations omitted).  To support plaintiff's claim that defendant acted maliciously, plaintiff presents evidence that defendant told plaintiff that he "looked guilty" by the look on his face and that defendant told plaintiff that he, a Cherry Hill police officer, would be placed in the general population at the county jail and incarcerated without bail.  It is up to the jury to decide whether these statements are credible and demonstrate ill will or spite.  Moreover, as stated above, the element of malice may be inferred from the lack of probable cause, and on that basis, plaintiff has demonstrated the need for a jury to decide that issue.

Defendant also contends that plaintiff cannot meet the requirement that the criminal proceedings resolved in his favor.  This proposition is contrary to law.  When a prosecutor has formally abandoned the proceedings, unless it is part of a compromise with the accused, the proceedings are held to have terminated in the accused's favor.  See Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002); White v. Brown, 2010 WL 1718205, *6 (E.D. Pa. 2010).

[9] Defendant's request for qualified immunity from plaintiff's federal claims must be denied.  "'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)).  Only if the plaintiff carries the initial burden of showing a constitutional violation "must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  Because disputed facts exist to preclude the Court's determination as to whether defendant violated plaintiff's constitutional rights, and as to whether

14

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment in her favor must be denied.  An Order consistent with this Opinion will be entered.


Dated: March 30, 2011                    s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

--------

defendant acted objectively reasonably even if plaintiff's rights were violated, the qualified immunity analysis cannot be conducted at this time.  Instead, once all the historical facts are no longer in dispute, the Court can decide the objectively reasonableness issue, if necessary.  Owens v. City of Atlantic City, 2008 WL 4205797, *9 (D.N.J. 2008) (citing Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007) (explaining, "Even though the determination of whether an officer made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge could decide the objective reasonableness issue once all the historical facts are no longer in dispute").